1  LANG, HANIGAN & CARVALHO, LLP
   Timothy R. Hanigan (State Bar No. 125791)
2  trhanigan@gmail.com
   Arthur Carvalho, Jr. (State Bar No. 125370)
3  acarvalho@lhcllp.com
   21550 Oxnard Street, Suite 760
4  Woodland Hills, California 91367
   Telephone: (818) 883-5644
5  Facsimile: (818) 704-9372

6  Attorneys for Plaintiffs
   808 Holdings, LLC
7

8              UNITED STATES DISTRICT COURT

9      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

11 808 HOLDINGS, LLC, a California limited    ) Case No.: CV12-2251 CAS(Ex)
   liability company,                         )
12                                            ) PLAINTIFF'S CONSOLIDATED OPPOSITION
                      Plaintiff,              ) TO MOTIONS TO DISMISS FOR LACK OF
13                                            ) JURISDICTION, FOR RECONSIDERATION,
          vs.                                 ) TO DISMISS/SEVER AND/OR TO QUASH
14                                            ) SUBPOENA FILED BY DOES 4 & 6
   COLLECTIVE OF JANUARY 3, 2012              )
15 SHARING HASH                               )
   E37917C8EEB4585E6421358FF32F29CD63         )
16 C23C91ON, and DOES 1 through 10,           ) Hearing Date: 10/1/12
   inclusive,                                 ) Hearing Time: 10:00 AM
17                                            ) Hearing Room:5, Spring (Judge Snyder)
                      Defendants.             )
18 _____    )

19

20

21      **808 HOLDINGS, LLC** (hereinafter, "Plaintiff" or "808 Holdings") hereby files this

22 Opposition to the Defendant's Motions to Dismiss for Lack of Jurisdiction, for Reconsideration, to

23 Dismiss/Sever and/or to Quash Subpoena filed by Does 4 & 6 ("Does"). (ECF 13 & 14).

24

25

26

27

28

LANG, HANIGAN & CARVALHO, LLP
21550 Oxnard Street, Suite 760
Woodland Hills, CA 91367
(818) 883-5644

**TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.    <u>The Court Should Not Consider Anonymous Motions to Quash</u> . . . . . . . . . 4

    II.    <u>The Court's Order Allowing Plaintiff to Seek Early Discovery Is
Proper and Should Not Be Disturbed</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        A.    **The Movant Has Not Been Unduly Burdened and Plaintiff's
Motives are Just and Proper** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            1.    **The Anonymous Movant Faces No Undue Burden** . . . . . . . . . . 8

            2.    **Movant's Misplaced Arguments and Attacks on
Plaintiff Show Movant's True Intent to Thwart
Plaintiff's Case In This Court** . . . . . . . . . . . . . . . . . . . . . . . . 9

            3.    **Plaintiff's Motives are Just and Proper and Outweigh
Defendant's Expectation of Privacy** . . . . . . . . . . . . . . . . . . . 9

    III.    <u>It Is Premature To Consider Arguments On The Merits Before
Defendants Are Named</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    IV.    <u>Plaintiff Has Alleged Facts Sufficient to Establish Personal Jurisdiction</u> . . . . 11

        A.    **The Law Supports Jurisdiction In This Forum Since Doe Is
Alleged To Have Willfully Infringed Upon Copyrights Owned
By A Forum Resident, And The Defendant Knew It Emanated
From This Forum** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        B.    **The Exercise Of Jurisdiction Is Reasonable** . . . . . . . . . . . . . . . . . . 16

    V.    <u>Because Each Defendant's Infringement Stems From The Same Transaction
Or Occurrence And There Are Common Questions Of Law And Fact To
Each Defendant, Plaintiff's Joinder Of All Defendants Is Proper</u> . . . . . . . . . . 17

        A.    **Federal Rule Of Civil Procedure 20(A)(2)** . . . . . . . . . . . . . . . . . . . 17

        B.    **By Engaging In Distribution Through The E379 Swarm And
Contributing To The Efficiency Of The Swarm, Does 1-10
Satisfy The Transaction Or Occurrence Test** . . . . . . . . . . . . . . . . . . 18

        C.    **All Does Are Tied Together By Common Questions Of Law
And Fact** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

        D.    **Joinder Is A Pragmatic Solution That Will Not Prejudice
Defendants** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

LANG, HANIGAN & CARVALHO LLP
21550 Oxnard Street, Suite 760
Woodland Hills, CA 91367
(818) 883-5644

**TABLE OF AUTHORITIES**

**CASE**                                                                                          **PAGE**

*3DO Co. v. Poptop Software, Inc.*, 1998 U.S. Dist. LEXIS 21281 (N.D. Cal. Oct. 27, 1998) . . . . 16

*Achte/Neunte Boll Kino Beteiligungs Gmbh & Co. v. Does 1-4,577*, 736 F.Supp.2d 212, 216 (D.D.C. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11

*Anger v. Revco Drug Co.*, 791 F.2d 956, 958 (D.C. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . 14

*Arista Records LLC v. DOES 1-27*, 584 F.Supp.2d 240 (D. Me. 2008) . . . . . . . . . . . . . . . . . 1, 11

*Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124 (9th Cir. 2010) . . . . . . . . . . . 15

*Burger King Corp. v. Rudzewicz*, 471U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) . . . . 17

*Calder v. Jones*, 465 U.S. 783, 789-90 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F.Supp.2d 323
Case No. 1:10-cv-00455-BAH (D.D.C. Mar. 22, 2011) . . . . . . . . . 4, 6, 9, 14, 15, 17, 19, 20, 24, 26

*Cinetel Films, Inc.; et al v. Does 1-1,052*, Case No. 8:11-cv-02438-JFM (ECF 63)
(D. Md. Apr. 4, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Columbia Pictures TV v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284, 289
(9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Davidson v. District of Columbia*, 736 F. Supp. 2d 115, 119 (D.D.C. 2010) . . . . . . . . . . . . . . . 19

*Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Doe v. Merten*, 219 F.R.D. 387, 394 (E.D. Va. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Doe v. United States (Doe I)*, 253 F.3d 256, 262 (6th Cir.2001) . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Dow Chem. Co. v. Calderon*, 422 F.3d 827, 831 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 13

*First Chicago Int'l United Exch. Co., 836 F.2d 1375, 1378* (D.C. Cir. 1988) . . . . . . . . . . . . . . 13

*Gammons v. Real Prop. Inv. Servs.*, Case No. CV-10-8081, 2010 U.S. Dist. LEXIS
139930 (D. Ariz. Aug. 9, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*General Steel Domestic Sales, LLC v. Suthers*, Case No. Civ S-06-411, 2007 U.S. Dist.
LEXIS 19321 (E.D. Cal. Mar. 2, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Global-Tech Appliances, Inc. v. SEB S.A.*, U.S., 131 S. Ct. 2060, 2070–71 (2011) . . . . . . . . . . . 17

*GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000) . . . . . . . 13

*Guest v. Leis*, 255 F.3d 325, 336 (6th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Hard Drive Productions, Inc. v. Does 1-45*, No. C-11-1959 (EMC)
(N.D. Cal. June 23, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hard Drive Productions, Inc. v. Does 1-90*, 5:11-CV-03825-HRL, D.E. 18, ECF 18
(N.D. Cal. March 30, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 26

*Harris Rutsky Co. Insurance Services, Inc., v. Bell Clements Ltd.,*
(9th Cir. 2003) 328 F.3d 1122 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-17

*In re Aimster Copyright Litig.*, 334 F.3d 643, 650 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . 17

*IO Group, Inc. v. Pivitol, Inc.*, 2004 U.S. Dist. LEXIS 6673 at *16 (N.D. Cal) . . . . . . . . . . . . . 16

*Interscope Records v. Does 1-14*, 558 F.Supp.2d 1176, 1178 (D. Kan. 2008) . . . . . . . . . . . . . . 11

*Janel Russell Designs, Inc. v. Mendelson & Assocs.*, 114 F. Supp. 2d 856, 862 (D. Minn. 2000) . 15

*Liberty Media Holdings, LLC v. Does 1-62*, 2012 WL 628309
(S.D. CA Feb. 24, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 14, 17, 20, 23, 24, 26

*Liberty Media Holdings, LLC v. Swarm Sharing Hash AE3; et al.* 1:11-cv-10802-WGY,
ECF 46 (D. MA.) (Oct. 31, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 9

*London-Sire Records, Inc. v. Doe 1*, 542 F.Supp. 2d 153, 162 (D. Mass 2008) . . . . . . . . 12, 14, 25

*Lynch v. Am. Family Mut. Ins. Co.*, Case No. 2:10-CV-00962, 2010 U.S. Dist.
LEXIS 116940 at *5 (D. Nev. Oct. 12, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Mcgip LLC v. Does 1-18*, No. C-11-1495 (EMC), *2011 U.S. Dist. LEXIS 64188* at *2
(N.D. Cal. June 2, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*M.K. v. Tenet*, 216 F.R.D. 133, 137 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974) . . . . . . . . . . . . . . . . . . . . 23

*Myers v. Malley Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . 17

*MyMail, Ltd. v. America Online, Inc.*, 223 F.R.D. 455 (D.C. Tex. 2004) . . . . . . . . . . . . . . . . . . . 21

*Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-98 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Nu Image, Inc. v. Does 1-, 932*, 2:11-CV-545-FTM-29, 2012 WL 1890829
(M.D. Fla. May 24, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Panavision International, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998) . . . . . . . . . . . . 16

*Pena v. Valo*, 563 F.Supp. 742, 747 (C.D. Cal. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Penguin Group, Inc. v. American Buddah*, 609 F.3d 30, 95 U.S.P.Q.2d (BNA)
1217 (2nd Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Righthaven LLC v. South Coast Partners, Inc.*, 2011 U.S. Dist. LEXIS 12802
(D. Nev. Feb. 5, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801, 803 (9th Cir. 2004) . . . . . . . . . . 16

*Sony Music Entertainment, Inc. v. Does 1-40*, 326 F.Supp.2d 556, 566 (S.D.N.Y. 2004) . . . . . . 11

*Stoianoff v. Montana*, 695 F.2d 1214, 1223 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Tiffany (NJ) Inc. v eBay, Inc.*, 600 F.3d 93, 110 n.16 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . 16-17

*UMG Recordings, Inc. v. Does*, Case No. 06-0652 SBA (EMC), 2006 U.S. Dist. LEXIS 32821 at *8-9 (N.D. Cal. Mar. 6, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*U.S. v. Does*, 655 F.2d 920, 922 n.1 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-7

*U.S. v Li*, Case No. 07-CR-2915, 2008 U.S. Dist. LEXIS 22283 at *15 (S.D. Cal. Mar. 20, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Microsoft Corp.*, 56 F.3d 1448, 1463 (D.C. Cir. 1995) . . . . . . . . . . . . . . . . . . . . 6

*Voltage Pictures, LLC v. Does*, 2011 WL 1807438 at *2 (D.D.C. 2011) . . . . . . . . . . 12, 19, 20, 26

*Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d at 422-24 . . . . . . . . . . . . . . . . . . . . . . 13

*West Coast Productions, Inc. v. John Does 1-5,829*, 2011 WL 2292239 (D.D.C. 2011) . . . . . . . 7-8

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**STATUTES**

Cal.Civ.Proc.Code § 410.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
Federal Rules of Civil Procedure 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Federal Rules of Civil Procedure 20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20, 21, 24
Federal Rules of Civil Procedure 21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
Federal Rules of Civil Procedure 45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
Local Rules 19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
Local Rules 37 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

1

2                                    **INTRODUCTION**

3          Does 4 & 6 *anonymously* bring their Motions to Dismiss for Lack of Jurisdiction, for

4    Reconsideration, to Dismiss/Sever and/or to Quash Plaintiff's third-party subpoenas (the "Motion").

5    The Motion should be denied for several reasons. Procedurally, the Defendants have no standing in

6    this Court since they are appearing anonymously as Does. Likewise, the Movants have no standing

7    to challenge the subpoena because it was issued to a third-party and thus there is no "undue burden"

8    placed on the Movants. Substantively, the Motion fares no better as the legal arguments in it are not

9    well taken; the cases cited are clearly distinguishable and the applicable law supports the Plaintiff.

10   First, the anonymous Movants cannot claim lack of jurisdiction since both - if they are in fact who

11   they say they are - used a California Internet Protocol address to conduct the infringing activity as

12   well as a computer located in the state of California. If the Court is inclined to consider wether

13   Defendant's arguments against jurisdiction to have any merit, the Plaintiff should first be given the

14   right to conduct jurisdictional discovery. Second, each and every Defendant was a member of the

15   *exact same infringing BitTorrent swarm, on the exact same date, sharing the exact same*

16   *copyrighted movie, and the exact same digital copy (hash file)*, as such, each and every Defendant

17   are logically related and tied together by common questions of both law *and* fact. Moreover, this

18   action - unlike the Movants' cited authorities in which plaintiffs sued hundreds or thousands of

19   defendants in a single action - is against 10 defendants, rendering focused joinder proper in this

20   action.

21          The Movants attempt to use smoke-and-mirrors to distract the Court from the issue at hand -

22   infringement of Plaintiff's copyright. This assertion is evidenced by the fact that at no time do the

23   anonymous movants - whoever they are - deny liability for infringement. Instead, they seek to

24   escape answering for their theivery on procedural technicalities, because, as the Movants are well

25   aware, copyright infringement is a strict liability tort. The movants never dispute that Plaintiff is

26   entitled to vindicate its copyright against the multitude of infringers who pirate its works through

27   the use of the BitTorrent file-trading protocol. "Not to act would be to allow those who would take

28   what is not theirs to remain hidden behind their ISPs and to diminish and even destroy the intrinsic

1  value of the Plaintiffs' legal interest." *Arista Records LLC v. DOES 1-27*, 584 F.Supp.2d 240, 252

2  (D. Me. 2008).  The joinder of 10 defendants - all of whom stand accused of copying and

3  distributing the same exact infringing file through the same exact BitTorrent swarm, on the same

4  exact date amongst each other - is a procedurally proper way for Plaintiff to vindicate its rights.

5  Moreover, focused joinder of the defendants from a single, distinct swarm is pragmatic and

6  overcomes the practical challenges of enforcement in a way that benefits all, including the putative

7  defendants.

8       Additionally, the filers of the Motion lack standing to raise these objections or hypothetical

9  arguments as they are premature before any defendant has been named and served.  On these

10  grounds 808 Holdings respectfully requests this Court to deny the Motion and allow this case to

11  move forward.  In the event the Court finds merit in the undisclosed Does' arguments, dismissal is

12  not the proper remedy.  The proper remedy would be to authorize jurisdictional discovery.

13                                          **BACKGROUND**

14       Hand-in-hand with the advancement of technology comes the advancement of theft.  Indeed,

15  the creation of the Internet has already produced advancements in the means pirates infringe upon

16  the constitutionally protected works of studios.  The current state-of-the-art weaponry of copyright

17  pirates is known as BitTorrent - a computer protocol that facilitates the downloading of large files

18  through a process of trading (uploading and downloading) small pieces ("bits") of the entire file

19  between other individuals seeking to acquire the same file.  See **Exhibit 1** for an explanation of the

20  BitTorrent process.  In the context of copyright infringement this process has caused disastrous

21  consequences to the entertainment industry.  *See,* **Exhibit 2**.

22       Court are, admittedly, in conflict over how to handle this grave threat to copyright holders.

23  One court went so far as to state "it would appear that the technology that enables copyright

24  infringement has outpaced technology that prevents it." *Hard Drive Productions, Inc. v. Does 1-90*,

25  5:11-CV-03825-HRL, D.E. 18, ECF 18 (N.D. Cal. March 30, 2012).

26       While it may be true the technology preventing infringement has been outpaced, the laws

27  protecting against infringement have not.  We are blessed to be part of the American legal system

28  which has an uncanny ability to evolve with technology.  Common Law principles though firmly

1   rooted in the pen-and-paper era, are still applicable to the state-of-the-art.  This unique quality of

2   American jurisprudence is on full display in the context of the Internet.  Common law contract

3   principles have been applied to Internet activity in the form of "click-through" contracts, and so too

4   has the common law of Torts evolved to suit the adjudication of Internet-based copyright

5   infringement.

6        Had Does walked into a local movie retailer, stolen the Plaintiff's motion picture, then mass

7   produced it in conjunction with 8 other accomplices there would be no question of each of the 10

8   defendant's liability and Plaintiff would be *required* to join all 10 infringers in a single action.  Such

9   is the circumstances of the instant case.  The BitTorrent process effectively mimics the above events

10  and accomplishes the same harm - the medium and means have changed but the offense remains the

11  same.  The only distinguishable feature of BitTorrent is that it allows the pirating of content in a

12  more efficient manner and can be conducted from the comfort of one's couch.  The saving grace for

13  copyright owners is that the process is only viable due to the interconnected and

14  interdependent nature of BitTorrent which results in every defendant being "logically related" to

15  each other.

16       Plaintiff is fully aware of the shoddy litigation techniques used by other studios.  Messrs.

17  Doe 4 and Doe 6 have cited to many of these cases and Plaintiff shares their distaste.  However,

18  Plaintiff has not and will not resort to such techniques which includes: suing hundreds or thousands

19  of defendants in a single suit, employing the leverage of embarrassment to effect settlements, and

20  filing complaints without the intent of ever serving or actually litigating its case.  Plaintiff's ultimate

21  objective is deterrence - not profit - and it brings these suits with the full intention of taking it to

22  trial if needed but it is not obligated to, nor is it going to, foist wasteful litigation on those who wish

23  to admit their guilt and make right the harm they have caused.  Plaintiff, who brings these suits in

24  good faith, should not be held to answer for the transgressions of those who have come before.

25       Plaintiff is a believer of the notion that a sound decision must be predicated on an accurate

26  understanding and not smoke-and-mirrors as the Movants would like.  While there is admittedly

27  conflict among courts in this area of law, decisions predicated on knowledge and understanding of

28  all the issues, facilitated by briefing from plaintiffs, defendants and *amici* have ultimately been

1   resolved in favor of the plaintiff.  In once such case, after receiving amicus briefs from the

2   Electronic Frontier Foundation (EFF), Public Citizen, American Civil Liberties Union (ACLU)

3   Foundation, and the ACLU of the Nation's Capital, Judge Beryl A. Howell of the District of

4   Columbia keenly articulated: (addressing the conflict among courts) "This Court is not bound by

5   findings in other cases and, in any event, this Court evaluated information not directly considered by

6   the other court, including... supplemental affidavits from plaintiffs, [ISP], and Amici." *Call of the*

7   *Wild Movie, LLC v. Does 1-1,062*, Case No. 1:10-cv-00455-BAH (D.D.C. Mar. 22, 2011) (Howell,

8   J.).  Judge Howell's decision remains the most exhaustively briefed and merits a close review as it

9   addresses in depth every issue raised by the Movants herein.  It is attached hereto as **Exhibit 3.**

10   Closely following this holding and based on *identical* allegations as made here is the recent

11   Southern District of California holding of *Liberty Media Holdings, LLC v. Does 1-62*, 2012 WL

12   628309 (S.D. CA Feb. 24, 2012) (Anello, J.) attached hereto as **Exhibit 4.**

13        Plaintiff crafted its Complaint with an acute understanding of the science of BitTorrent and

14   posits new legal arguments and factual allegations not previously considered by the Movants'

15   authorities.  For this reason Plaintiff is not bound by the incompetent pleading and practice of those

16   who came before nor the distinguishable holdings specific to them and thus the Movants' brief is

17   ineffective in the face of Plaintiff's allegations.

18   **ARGUMENT**

19   **I.**    **THE COURT SHOULD NOT CONSIDER ANONYMOUS MOTIONS TO QUASH**

20        Does repeatedly chastise Plaintiff for the "harassing schemes" of others - blanket statements

21   for which they have not and cannot show *any* evidence.[1]  Aside from Movants' own blatant

22   disregard for the Local Rules,[2] Movants also believe the Federal Rules of Civil Procedure are

23   inapplicable to them.  The Court should strike the motion to quash because the complete and total

24

25   [1]"This allegation is not supported in the motion papers or by [Plaintiff's] actions to date.  It is purely speculative and not grounds for allowing the moving defendants to proceed anonymously." *Liberty Media Holdings, LLC v. Swarm*

26   *Sharing Hash AE3; et al*, 1:11-cv-10802-WGY, ECF 46 (D. MA.) (Oct. 31, 2011)

27   [2]L.R. 37-1 requires a Conference of Counsel within 10 days after service of a letter requesting a conference prior to the filing of any motion.  This requirement is only relieved by ***written order of the Court upon good cause shown*** and not "I ran out of time" as the movants would suggest.  Furthermore, failing of counsel to comply with or cooperate with the

28   foregoing procedure is grounds for the imposition of sanctions under L.R. 37-4.

1    anonymity of a Doe filer violates both the letter and the substance of the rules pertaining to

2    standing, Fed. R. Civ. P. 11, and The Ninth Circuit.

3         Filing a document on behalf of "John Doe 4/6" is insufficient to establish standing in this

4    action. *See U.S. v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1980) ("the identity of the parties in any

5    action, civil or criminal, should not be concealed except in an unusual case, where there is a need

6    for the cloak of anonymity"); *Doe v. Merten*, 219 F.R.D. 387, 394 (E.D. Va. 2004) (denying request

7    to proceed anonymously in part because "standing to litigate these issues clearly does depend on

8    their identity") (internal citations omitted).  Central to the Does standing is whether they have a

9    "personal stake" in the outcome of the controversy.  *See e.g., Stoianoff v. Montana*, 695 F.2d 1214,

10   1223 (9th Cir. 1983).  The Movants have not identified themselves as a particular defendant or

11   provided a sworn statement that they are particular subscribers affected by Plaintiff's subpoena - the

12   Movants may be defendants, *amici* or competitors - and thus Movants lacks standing for this Court

13   to entertain their Motion.

14        The Federal Rules of Civil Procedure similarly require persons filing papers identify

15   themselves.  "[P]arties to a lawsuit must typically openly identify themselves in their pleadings to

16   protect the public's legitimate interest in knowing all the facts involved, including the identities of

17   the parties." *United States v. Microsoft Corp.*, 56 F.3d 1448, 1463 (D.C. Cir. 1995) (internal

18   citations omitted).  The public has a common law right of access to judicial records and allowing a

19   party to litigate anonymously undermines that public right. *See Nixon v. Warner Commc'ns, Inc.*,

20   435 U.S. 589, 597-98 (1978); *Doe v. United States (Doe I)*, 253 F.3d 256, 262 (6th Cir.2001)

21   ("While we deliberate in private, we recognize the fundamental importance of issuing public

22   decisions after public arguments based on public records").

23        In the case at bar, Does seek to proceed anonymously in an attempt to prevent Plaintiff from

24   obtaining the identifying information they have previously provided to their ISP and for which the

25   Court has already granted Plaintiff leave to subpoena.  It should not be overlooked that the sole

26   reason for doing so is to avoid answering for the infringement of Plaintiff's copyright.  It is well-

27   settled law, however, that this supposed "privacy interest" in identifying information is minimal at

28   best and lacks the heavy interest required to warrant the special dispensation of anonymous filing.

1   *See, U.S. v Li*, Case No. 07-CR-2915, 2008 U.S. Dist. LEXIS 22283 at *15 (S.D. Cal. Mar. 20,

2   2008) ("Defendant had no reasonable expectation of privacy in her IP log-in histories and IP

3   addressing information"); *Call of the Wild Movie, LLC v. Does 1-1,062*, Civil Action No. 12-455,

4   slip op. at 6-7 (D.D.C. Feb. 24, 2011) (Howell, J.); *Achte/Neunte Boll Kino Beteiligungs Gmbh &*

5   *Co. v. Does 1-4,577*, 736 F.Supp 2d 212, 216 (D.D.C. 2010) (Collyer, J.) ("With regard to Mr.

6   Doe's assertion that the information sought is 'personal,' the courts have held that Internet

7   subscribers do not have an expectation of privacy in their subscriber information as they already

8   have conveyed such information to their [ISP]").

9          Moreover, the Doe defendant is not entitled to litigate this case on the merits anonymously.

10   *See, U.S. v. Doe*, 655 F.2d at 922 n. 1; *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992) ("A

11   plaintiff should be permitted to proceed anonymously only in those exceptional cases involving

12   matters of a highly sensitive and personal nature, real danger of physical harm . . . the risk that a

13   plaintiff may suffer some embarrassment is not enough"); *West Coast Productions, Inc.*, 2011 WL

14   2292239 at *2 (denying request to proceed anonymously in a BitTorrent suit).  *See, U.S. v. Does*,

15   655 F.2d at 1013  (Defendant requested anonymity because of increased likelihood of violent abuse

16   in prison for sex offenders and court rejected as it was not a unique circumstance: "However,

17   because this concern is equally present for all similarly situated sex offenders who face prison

18   sentences, we cannot say that [defendant's] case is unusual").  Here too, the movants have failed to

19   show any unique circumstance under which they would suffer that similarly situated Doe

20   Defendants who face liability for copyright infringement of adult entertainment do not.

21          808 Holdings is sensitive to the fact that allegations of infringing upon pornography may be

22   embarrassing to some defendants, but embarrassment alone is not a reason to overcome the public's

23   interest in open and transparent litigation as "the potential embarrassment or social stigma that

24   [Does] may face once their identities are released in connection with this lawsuit is not grounds for

25   allowing them to proceed anonymously.[3]" *Liberty Media Holdings, LLC v. Swarm Sharing Hash*

---

27   [3]"This case, which involves the alleged infringement of homosexual pornography, only creates an innuendo as to

28   the defendants' sexual orientation... the Court presently declines, however, to grant anonymity to all of the defendants based on the generalized concerns of public scorn expressed by only two of the thirty-eight defendants." *Id.*

1   *File AE3; et al.*, 1:11-cv-10802-WGY (D. Mass. Oct. 31, 2011) (Young, J.) [**Exhibit 5**]  *If* any

2   defendant suffers from a particularly precarious circumstance, the appropriate recourse is not to

3   flatly prevent Plaintiff from asserting a valid claim.

4       "Doe 4/6" are unable to sufficiently put forth any privacy interest which would warrant them

5   to proceed anonymously. *See, Mcgip LLC v. Does 1-18*, No. C-11-1495 (EMC), *2011 U.S. Dist.*

6   *LEXIS 64188* at *2 (N.D. Cal. June 2, 2011) (finding it "difficult" to say a Doe had a privacy

7   interest when he or she had opened his or her computer to others through file sharing or allowed

8   another person to do so), citing *UMG Recordings, Inc. v. Does*, Case No. 06-0652 SBA (EMC),

9   2006 U.S. Dist. LEXIS 32821 at *8-9 (N.D. Cal. Mar. 6, 2006).  This is all the more appropriate

10  where the movant is not necessarily the defendant.  As the Plaintiff made clear in its Motion for

11  Early Discovery (ECF 9), the name of the subscriber is sometimes only the first step in identifying

12  the Defendant "still, just as the investigation of a hit-and-run would start with the owner of a vehicle

13  whose license plate was recorded at the scene, so too must the investigation start with the Internet

14  access account owner." *Id*.

15      Accordingly, the Court should deny the Movants' request to proceed anonymously and

16  direct the Clerk of the Court not to docket any motions filed by litigants seeking to proceed

17  anonymously.

18  **II.**   **THE COURT'S ORDER ALLOWING PLAINTIFF TO SEEK EARLY DISCOVERY IS PROPER**

19       **AND SHOULD NOT BE DISTURBED**

20      Plaintiff has previously successfully argued for early discovery under the applicable law of

21  this Circuit.  (ECF 9 and 10).  Defendant's assertion that two recent "identical cases" held otherwise

22  is *inconceivable!*

23      Erroneous arguments against focused joinder will be addressed below, however, it should be

24  noted that in the cited authorities the court in *Malibu Media v. John Does 1-10*, Case No. SACV 12-

25  649-JST(MLGx), [DE 8] (C.D. Cal. June 14, 2012) denied *Malibu Media's* request for early

26  discovery because it sought information not pertinent to identification of the defendants.  Plaintiff is

27  unsure why the movant cites to this ruling as the only information Plaintiff sought and for which the

28  Court granted was "for the specific purpose of discovering the identities of the subscribers to whom

1  the IP addresses listed in ECF 6 had been assigned at the time the alleged unauthorized distribution

2  of [the motion picture] occurred." (ECF 10). Plaintiff's *ex parte* request, as well as Plaintiff's

3  subpoenas are in accord with movants' cited authority.

4     As to the issue of the court's refusal to permit its use in *Malibu Media's* extortion scheme,

5  should the anonymous movant or the Court have proof of similar tactics on the part of Plaintiff then

6  it would agree that expedited discovery should not have been granted. However, no such proof

7  exists. Plaintiff has every intention of serving each and every defendant *and* litigating this case on

8  the merits. Movants offer no evidence and indeed it is not true that Plaintiff seeks "nuisance-value"

9  settlement checks or demand obscene settlement amounts. And Plaintiff's track record in this

10  litigation is without blemish.

11     Plaintiff's objective is deterrence - not profit - and it seeks relief only from those responsible

12  for the harm or those who had an ability to prevent it.

13    **A.**  **THE MOVANT HAS NOT BEEN UNDULY BURDENED AND PLAINTIFF'S MOTIVES**

14      **ARE JUST AND PROPER.**

    **1.**  **THE ANONYMOUS MOVANT FACES NO UNDUE BURDEN**

15     Plaintiff concurs with the movants' contention that this Court has the discretion to control

16  discovery in this action. However, the subpoenas that are the subject of this action were issued

17  pursuant to Fed. R. Civ. P. 45 and as such "the Court must quash a subpoena issued to a **nonparty**

18  if the subpoena subjects the **nonparty** to an undue burden or expense."[4] Fed. R. Civ. P. 45(c). The

19  **nonparty** seeking relief from subpoena compliance bears the burden of demonstrating that a

20  subpoena should be modified or quashed." *Call of the Wild Movie*, Case No. 1:10-cv-00455-BAH

21  (D.D.C. Mar. 22, 2011) (collecting authorities); *see also*, *Cinetel Films, Inc.; et al v. Does 1-1,052*,

22  Case No. 8:11-cv-02438-JFM (ECF 63) (D. Md. Apr. 4, 2012) ("...the subpoena is directed toward

23  the ISPs and not the Doe Defendants and accordingly does not require the [defendants] to produce

24  any information or otherwise respond") (internal citations omitted)).

25  //

26

---

27    [4]"If there was an undue burden, it would fall upon the ISPs. As of the date of this memorandum, none of the ISPs
has moved to quashed the subpoena on the ground of undue burden, or indeed on any ground." *Liberty Media Holdings*,

28  1:11-CV-10802-WGY (D. MA) (ECF. 46) (Oct. 31, 2012)

1    In accord with the stated authorities Plaintiff issued third party Rule 45 subpoenas to the

2    ISPs associated with each IP address.  While it is Plaintiff's contention that the movants are third

3    parties and thus have no standing to make any of the arguments they attempt to make, they are not

4    *the* third party in which Plaintiff issued a subpoena to.  As such, the movants have no obligation to

5    produce any information or otherwise respond and hence there can be no "undue burden" placed

6    upon them.  *Call of the Wild Movie v. Smith*, 274 F.R.D. 334, 338 (D.D.C. 2011) ("defendants face

7    no obligation to produce any information under the subpoenas issued to their respective ISPs and

8    cannot claim any hardship, let alone undue hardship").

9    **2.    MOVANTS' MISPLACED ARGUMENTS AND ATTACKS ON PLAINTIFF SHOW**

10   **MOVANTS' TRUE INTENT TO THWART PLAINTIFF'S CASE IN THIS COURT**

         The Movants' assertion that an IP address can only identify a subscriber to an ISP and not

11   the specific identity of the person that actually infringed is correct.  It is incorrect, however, to assert

12   that Plaintiff would need "extensive" additional information that cannot be gleaned from

13   information requested by subpoena.  In addition to the information provided by the subpoena

14   Plaintiff would require responses to mere interrogatories regarding the MAC address assigned to

15   each computer who utilized each subscribers' connection.  This information is not invasive nor does

16   it subject a subscriber to embarrassment or expense and Plaintiff has found that those who have

17   professed innocence have voluntarily complied via a short telephone conversation and without the

18   need for further discovery.  Plaintiff, as previously shown, litigates these cases in good faith and has

19   not, and would not, request the aforementioned information from "any residence of any neighbor,

20   houseguest or other sharing his internet access."  Such information would be beyond the scope of

21   the instant action as well as beyond the scope of discoverable evidence within the custody and

22   control of the subscriber; to assert otherwise is ridiculous.

23        Moreover, the Movants' reliance on the *Boy Racer* line of cases is, again, flawed as a large

24   basis for that holding is the fact that the plaintiffs misrepresented facts and information to the court.

25   In contrast, Plaintiff has been nothing but accurate with this Court regarding the ability to identify

26   an infringer by IP address alone.  Examples of Plaintiff's "[accurate] portrayal" is repeated

27   numerous times in both the Complaint and Plaintiff's Motion For Early Discovery.

28

1   Plaintiff realizes that facts can be troublesome things, however, *this* Court is entitled to full
2   and accurate portrayal of them, whether or not they comport with Movants' attenuated arguments.

3   **3.    PLAINTIFF'S MOTIVES ARE JUST AND PROPER AND OUTWEIGH MOVANTS'**
4   **EXPECTATION OF PRIVACY**

5   808 Holdings is the owner of the valid and enforceable copyright of a work that is being
    wildly infringed over the BitTorrent protocol by anonymous internet users. As Judge Woodcock of
6   the District of Maine keenly articulated, there is no impropriety in seeking appropriate redress for
7   this harm:

8       "[T]he Court begins with the premise that the plaintiffs have a statutorily
9       protected interest in their copyrighted materials and that the Doe Defendants, at
        least by allegation, have deliberately infringed that interest without consent or
10      payment. Under the law, the Plaintiffs are entitled to protect their copyrighted
        material and it is difficult to discern how else in this unique circumstance the
11      Plaintiffs could act. Not to act would be to allow those who would take what is
        not theirs to remain hidden behind their ISPs and to diminish and even destroy the
12      intrinsic value of the Plaintiffs' legal interest."

13  *Arista Records LLC*, 584 F.Supp.2d at 252 (dismissing concerns of abuse of the judicial process).

14  Defendants were all **caught** while **currently** infringing Plaintiff's copyright via an Internet
15  connection supplied by their ISPs. Thus, all Defendants are tortuous infringers that have no
16  legitimate expectation of privacy in the subscriber information provided to the ISPs, much less in
17  distributing the copyrighted work in question without permission. *see, Interscope Records v. Does*
18  *1-14*, 558 F.Supp.2d 1176, 1178 (D. Kan. 2008) (a person using the internet to distribute or
19  download copyrighted music without authorization is not entitled to have their identity protected
20  from disclosure under the First Amendment); *Guest v. Leis*, 255 F.3d 325, 336 (6th Cir. 2001)
21  ("computer users do not have a legitimate expectation of privacy in their subscriber information
22  because they have conveyed it to another person - the system operator"); and *Sony Music*
23  *Entertainment, Inc. v. Does 1-40*, 326 F.Supp.2d 556, 566 (S.D.N.Y. 2004) ("defendants have little
24  expectation of privacy in downloading and distributing copyrighted songs without permission.")

25  Comparatively, Movants do not have a legitimate interest in remaining anonymous, where
26  Plaintiff has a strong, statutorily recognized and protected interest in safeguarding its copyrights
27  from the rampant infringement of BitTorrent thieves. Given that Plaintiff's ultimate objective is
28  deterrence, it will happily take these cases to trial if need be. But it is not obligated to, nor is it

1   going to, foist wasteful litigation on individuals who wish to admit their guilt and make right the

2   harm they have caused. Therefore, Plaintiff has established this "good faith" factor.

3   **III.   IT IS PREMATURE TO CONSIDER ARGUMENTS ON THE MERITS BEFORE DEFENDANTS ARE NAMED**

4

5          Plaintiff notes that many of the Movants' arguments go toward challenging the Plaintiff's

6   copyright claim on the merits.  It is well settled, however, that it is premature to consider arguments

7   on the merits, let alone affirmative defenses, before any of the defendants are named in the case.

8   _Achte/Neunte Boll Kino Beteiligungs HmbH & Co. v. Does 1-4,577_, 736 F.Supp.2d, 212, 215 (D.C.

9   Cir. 2010) ("[t]he merits of this case are not relevant to the issue of whether a subpoena is valid and

10  enforceable.  In other words, they may have valid defenses to this suit, but such defenses are not at

11  issue at this stage of the proceedings.")); _Voltage Pictures, LLC v. Does_, 2011 WL 1807438 at *2

12  (D.D.C. 2011); _London-Sire Records, Inc. v. Doe 1_, 542 F.Supp2d 153, 162 (D. Mass 2008)

13  (Gertner, J) (plaintiffs "are not required to win their case in order to serve the defendants with

14  process").

15         A general denial of personal jurisdiction is not a basis for quashing Plaintiff's subpoena, as

16  it would deny Plaintiff access to the information critical to bringing the proper, heretofore

17  unidentified defendants into the lawsuit to address the merits of the case. _See, Hard Drive_

18  _Productions, Inc. v. Does 1-45_, No. C-11-1959 (EMC) at *2 (N.D. Cal. June 23, 2011) (denying

19  motion to quash).  "[L]est the defendant defeat the jurisdiction of a federal court by withholding

20  information on its contacts with the forum." _Id._ at *347 (citations omitted & emphasis added).

21         Plaintiff has met its threshold showing that its claims for copyright infringement are no

22  "mere fishing trip" by submitting evidence of its prima facie claim for copyright infringement.

23  "The plaintiff need not actually prove their case at this stage; they need only present evidence

24  adequate to allow a reasonable fact-finder to find that each element of their claim is supported."

25  See, _London-Sire Records_, 542 F.Supp.2d at 176 (declining to consider the nature of the evidence

26  gathered by the investigator).

27         If they are named in suit, Movants will have ample opportunity to challenge personal

28  jurisdiction and joinder on the merits, "[b]ut these are substantive defenses for a later stage." _Id._

---

11

1    **IV.   PLAINTIFF HAS ALLEGED FACTS SUFFICIENT TO ESTABLISH PERSONAL JURISDICTION**

2           The anonymous Movants challenge this Court's jurisdiction over them by spuriously

3    reducing Plaintiff's basis for personal jurisdiction to: "because Plaintiff is a California entity, the

4    Doe defendants' use of the BitTorrent Protocol to download Plaintiff's film necessary [sic] involved

5    'unlawful and intentional tortuous [sic] acts' that would 'cause injury in this jurisdiction.  Such

6    allegations are insufficient to establish jurisdiction." (ECF 13 p. 4) (internal citations omitted).  This

7    is simply not what Plaintiff has alleged.  For ease of reference, attached hereto as **Exhibit 6** is a

8    table quoting each of the jurisdictional allegations made in the Complaint.

9           The anonymous Movants reduce the numerous and detailed allegations to that incorrect

10   summation because they are aware that should the Court consider *all* of Plaintiff's allegations it will

11   cure the jurisdictional defects discussed in the holdings on which Movants rely.

12          The "identical" authorities to which the Movants cite are in fact inapposite since the

13   jurisdictional allegations in those cases are either based entirely on *general in personam* jurisdiction

14   and/or are based in large part on the Florida long arm statute which is considerably more restrictive

15   than that of California.  *See* Case No. 12-CIV-01642-RGK-SS, Complaint (C.D. Cal. Feb. 27,

16   2012); *Nu Image, Inc. v. Does 1-,932*, 2:11-CV-545-FTM-29, 2012 WL 1890829 (M.D. Fla. May

17   24, 2012).  Cal.Civ.Proc.Code § 410.10, "allows courts to exercise jurisdiction to the limits of the

18   Due Process Clause of the U.S. Constitution." *Dow Chem. Co. v. Calderon*, 422 F.3d 827, 831 (9th

19   Cir. 2005).

20          Further distinguishing those cases is the fact that Plaintiff has alleged facts sufficient to

21   establish *either* general *or* specific *in personam* jurisdiction - including the fact that **defendants**

22   **caused harm in this district and distributed bits to other members of the swarm within this**

23   **district.** *See*, Plaintiff's jurisdictional allegations attached hereto as **Exhibit 6.**

24          When a defendant raises an affirmative defense such as lack of personal jurisdiction, "the

25   general rule is that a plaintiff must make a *prima facie* showing of the pertinent jurisdictional facts."

26   *First Chicago Int'l United Exch. Co., 836 F.2d 1375, 1378* (D.C. Cir. 1988).  The Plaintiff will

27   normally be afforded the opportunity to engage in discovery relating to jurisdictional facts.  See

28   *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000) ("[I]f a party

1   demonstrated that it can supplement its jurisdictional allegations through discovery, then

2   jurisdictional discovery is justified"); *Wells Fargo & Co.*, 556 F.2d at 422-24 (plaintiff must be

3   allowed opportunity to develop the record and make a prima facie showing of jurisdictional facts.")

4        The Central District of California has found even that standard is too high:

5        "It is the view of the court that it would be improper to decide the instant motion on
         the basis of affidavits alone.  Plaintiff has made a prima facie showing of
6        jurisdictional facts, but he has not submitted proof amounting to a preponderance of
         the evidence.  Indeed, plaintiff could not possibly do so at this time, nor would it be
7        fair to hold him to such a burden.  Such a requirement would permit a defendant to
         obtain a dismissal simply by controverting the facts established by a plaintiff through
8        his own affidavits and supporting materials."

9   *Pena v. Valo*, 563 F.Supp. 742, 747 (C.D. Cal. 1983) (citations omitted).

10       "Therefore, before the complaint has been served and a response received, the court is not

11  positioned to determine conclusively whether personal jurisdiction exists." *Anger v. Revco Drug*

12  *Co.*, 791 F.2d 956, 958 (D.C. Cir. 1986) (per curiam).

13       Indeed, Plaintiff has yet to identify Messrs. Doe or serve them with the Complaint.  The

14  anonymous Movants may be Does or they may not be.  We do not yet know.  The Movants seems to

15  assume that they will be named as a defendant once their contact information is turned over to the

16  Plaintiff by the ISP, but again, this conclusion is premature.  If either or both of Messrs. Does'

17  Internet accounts were used by third parties to commit the infringement, than it may be those third

18  parties, rather than the Movants, who will properly be named as defendants.  Until the Plaintiff

19  formally names and serves the defendants, there is no certainty that any of the subscribers will

20  actually ever be parties.  *See, Liberty Media Holdings*, 2012 WL 628309 (S.D.Cal. Feb. 24, 2012)

21  (collecting authorities) ("Although [defendants] generally assume that they will be named as

22  defendants once their contact information is turned over to Plaintiff by their ISP, the Court cannot

23  automatically draw that conclusion").  Even if the subscribers associated with each IP address do

24  become the named defendants, "they will have the opportunity to assert their jurisdictional defenses

25  once they are served with process, either in their answers or in pre-answer motions to dismiss...

26  [b]ut these are substantive defenses for a later stage." *London-Sire Records, Inc.*, 542 F.Supp.2d at

27  162.  Until that time, however, these arguments are premature, especially in the absence of

28  jurisdictional discovery.  *See, e.g., Call of the Wild Movie*, 2011 WL 996789 at *8-10.("[A]t this

1   juncture when no putative defendant has been named, the Court has limited information to assess

2   whether any putative defendant has a viable defense of lack of personal jurisdiction or to evaluate

3   possible alternate basis to establish jurisdiction); *London-Sire Records, Inc. v. Doe 1, 542,*

4   F.Supp.2d 153, 180-81 (D. Mass 2008) (denying motion to quash for lack of personal jurisdiction

5   filed by Jane Doe defendant because jurisdictional discovery might establish a basis for

6   jurisdiction); *Sony Music Entm't*, 326 F.Supp. 2d at 567-68 (concluding it is premature to determine

7   personal jurisdiction before the Doe

8    had been identified).

9          Because the Court has limited information to assess jurisdiction any determination would be

10   premature at this juncture.  "To be sure, such a showing is certainly required when parties are

11   identified and named.  The Court would then be able to evaluate personal jurisdiction defenses"

12   *Call of the Wild Movie*, 770 F.Supp2d 323 at *346.  Alternatively, should the Court determine

13   otherwise, Plaintiff should be allowed to conduct jurisdictional discovery "lest the defendant defeat

14   the jurisdiction of a federal court by withholding information on its contacts with the forum." *Id.* at

15   *347 (internal citations omitted).

16   **A.    THE LAW SUPPORTS JURISDICTION IN THIS FORUM SINCE DOES ARE ALLEGED**

17   **TO HAVE WILLFULLY INFRINGED UPON COPYRIGHTS OWNED BY A FORUM**

18   **RESIDENT, AND THE DEFENDANTS KNEW IT EMANATED FROM THIS FORUM**

19          It is well-established that a copyright infringement plaintiff has the privilege of bringing suit

20   in its home jurisdiction, and need not chase every infringer to each and every jurisdiction.  The

21   recent 9th Circuit case *Brayton Purcell LLP v. Recordon & Recordon,* 606 F.3d 1124 (9th Cir. 2010),

22   lends ample support for the proposition that jurisdiction is proper where the copyright owner is

23   located. Many 9th Circuit cases are in accord with that theory. *Columbia Pictures TV v. Krypton*

24   *Broad. of Birmingham, Inc.,* 106 F.3d 284, 289 (9th Cir. 1997) ("Columbia alleged, and the district

25   court found, that Feltner willfully infringed copyrights owned by Columbia, which, as Feltner knew,

26   had its principal place of business in the Central District.  This fact alone is sufficient to satisfy the

27   'purposeful availment' requirement"); *Righthaven LLC v. South Coast Partners, Inc.,* 2011 U.S.

28   //

1   Dist. LEXIS 12802 (D. Nev. Feb. 5, 2011) (same); see also *Penguin Group, Inc. v. American*

2   *Buddah*, 609 F.3d 30, 95 U.S.P.Q.2d (BNA) 1217 (2nd Cir. 2010).

3   Copyright infringement is classified as an intentional tort. *Columbia Pictures*, 106 F.3d at

4   289 (9th Cir. 1997) (overruled on other grounds); *Janel Russell Designs, Inc. v. Mendelson &*

5   *Assocs.,* 114 F. Supp. 2d 856, 862 (D. Minn. 2000).  Infringement of copyrights owned by a known

6   forum resident alone is enough to establish "purposeful availment" under Supreme Court

7   authorities. *See, Columbia,* 106 F.3d at 289, *Calder v. Jones*, 465 U.S. 783, 789-90 (1984).  An

8   individual is subject to personal jurisdiction where he has engaged in intentional acts, which he

9   knew would cause harm in the forum state. *Panavision International, L.P. v. Toppen*, 141 F.3d

10   1316, 1321 (9th Cir. 1998) ("In tort cases, jurisdiction may attach if the defendant's conduct is aimed

11   at or has an effect in the forum state").

12   Purposeful direction was clarified by the Ninth Circuit to mean "evidence of the defendant's

13   actions outside the forum state that are directed at the forum, such as the distribution in the forum

14   state of goods originating elsewhere." *Schwarzenegger*, at 374 F.3d at 803.  The "Effects Test" as it

15   has come to be known, may be satisfied if the defendant is alleged to have (1) committed an

16   intentional act; (2) expressly aimed at the forum; and (3) causing harm the brunt of which is

17   suffered - and the defendant knows is likely to be suffered - in this forum. *Harris Rutsky*, 328 F.3d

18   at 1131 (9th Cir.2002) (citations omitted).

19   In *Toeppen*, the Ninth Circuit specifically stated that, "[b]ecause the defendant's tortuous

20   behavior was knowingly aimed at a company whose principal place of business was in California,

21   and whose industry – the entertainment industry – was primarily located in California, defendant's

22   conduct was likely to have an effect in the forum state.  As defendant knew his actions were likely

23   to cause harm in California, under the "effects test," the purposeful availment requirement necessary

24   for specific, personal jurisdiction was satisfied." *Toeppen* at 1322.  Courts have repeatedly applied

25   the same principal in the copyright infringement context. *3DO Co. v. Poptop Software, Inc.*, 1998

26   U.S. Dist. LEXIS 21281 (N.D. Cal. Oct. 27, 1998), citing *Toeppen*, 141 F.3d at 1322; *IO Group,*

27   *Inc. v. Pivitol, Inc.*, 2004 U.S. Dist. LEXIS 6673 at *16 (N.D. Cal).  *See also, Yahoo! Inc. v. La*

28   *Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006).

1    In this matter, the Movants (whoever they are), intentionally reproduced and **distributed**

2  works belonging to Plaintiff by and through BitTorrent protocol to others - including residents of

3  this forum. Messrs. Does should have known that this act would have had an effect in California

4  because of the first scene of the motion picture illustrates that Plaintiff is a California company.

5  Any assertion that defendants have no idea as to where they may be trading bits to and from is

6  erroneous. See Declaration of Vaughn M. Greenwalt [**Exhibit 7**]. Willful blindness is not a

7  defense. "The principle that willful blindness is tantamount to knowledge is hardly novel." *Tiffany*

8  *(NJ) Inc. v eBay, Inc.*, 600 F.3d 93, 110 n.16 (2d Cir. 2010) (collecting cases); see *In re Aimster*

9  *Copyright Litig.*, 334 F.3d 643, 650 (7th Cir. 2003) ('Willful blindness is knowledge, in copyright

10  law . . . as it is in the law generally.'); cf. *Global-Tech Appliances, Inc. v. SEB S.A.*,  U.S.,

11  131 S. Ct. 2060, 2070–71 (2011)   Furthermore, it is common knowledge that the epicenter of the

12  entertainment industry is in California.

13    Under the Effects Doctrine, Defendants knowingly infringed Plaintiff's works,

14  understanding that the negative effect of such infringement would be suffered in California.  If the

15  Plaintiff would not have been injured, but for defendants forum-related conduct, then jurisdiction is

16  proper. *Myers v. Malley Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2000).  Plaintiff's claims of

17  copyright infringement arise directly from defendant's forum-related activities as described above.

18  Defendant's actions involving the reproduction, distribution and public display of its copyrights.

19   **B.    THE EXERCISE OF JURISDICTION IS REASONABLE**

20    It is well-settled law that if the Plaintiff satisfies the first two factors of the analysis, the

21  "defendant bears the burden of overcoming a presumption that jurisdiction is reasonable, by

22  presenting a compelling case that specific jurisdiction would be unreasonable." *Burger King Corp.*

23  *v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)); *Harris Rutsky*, 328 F.3d

24  at 1132 (9th Cir.2002).

25    In the anonymous Movants' motion there are zero facts alleged to combat Plaintiff's

26  allegations and therefore the Movants cannot present a "compelling case" as to why specific

27  jurisdiction is unreasonable in this forum. *Liberty Media Holdings, LLC*, No. 11 CV 575 MMA

28  (NLS), 2012 WL 628309 (S.D.Cal. Feb. 24, 2012); *Call of the Wild Movie, LLC v. Does 1-1,062*,

1   770 F.Supp.2d 332, 347 (D.D.C.2011) ("[A]t this juncture when no putative defendant has been

2   named, the Court has limited information to assess whether any putative defendant has a viable

3   defense of lack of personal jurisdiction or to evaluate possible alternative basis to establish

4   jurisdiction.")). *Furthermore, <u>Defendants are California residents</u> and is thus amenable to*

5   *jurisdiction in this state!!* See Declaration of Vaughn M. Greenwalt attached hereto as **Exhibit 7**.

6       Plaintiff has alleged facts sufficient to satisfy the test for specific jurisdiction consistent with

7   the precedents of this Circuit. For these reasons specific jurisdiction over Messrs. Doe 4 and 6 is

8   proper. Therefore, the Court should deny any relief based on an alleged lack of personal

9   jurisdiction.

10  **V.    BECAUSE EACH DEFENDANT'S INFRINGEMENT STEMS FROM THE SAME TRANSACTION**

11  **OR OCCURRENCE AND THERE ARE COMMON QUESTIONS OF LAW AND FACT TO EACH**

12  **DEFENDANT, PLAINTIFF'S JOINDER OF ALL DEFENDANTS IS PROPER**

13      Before addressing the merits of proper joinder in this action Plaintiff must first combat the

14  Movants' bald assertion that it "hopes" for a contrary ruling on joinder from this Court for which

15  "there is no basis". Plaintiff is *confident* of a contrary ruling because this Court is not bound by out-

16  of-District holdings nor required to concur with decisions based on inapposite and incompetent

17  pleading and practice. Plaintiff is *confident* of a contrary ruling because - as many other courts have

18  found within *this* Circuit - when properly pled, joinder is in fact appropriate.

19      It is likewise false to assert that a favorable ruling for Plaintiff "will almost certainly result

20  in an additional avalanche of filings in this District naming thousands of defendants in actions

21  initiated by every lawyer representing the adult entertainment industry." The Central District is

22  well-equipped to handle such a scenario as it limits the number of Doe Defendants a plaintiff may

23  sue in a single action to a grand total of 10. L. R. 19-2. The Southern District of California has

24  repeatedly found joinder proper - when properly pled - and has seen no "avalanche of filings."

25  Joinder of Does 1-10 in the present action is not only procedurally proper, it is the only practical and

26  feasible method for Plaintiff to vindicate its statutorily protected copyright and the only efficient

27  means for the Court to administer justice. While the Movants takes offense at being joined, they are

28  //

---

17

1   unable to provide remotely adequate support for a finding of misjoinder.  Thus, the Court should

2   allow this case to proceed against all Defendants jointly.

3       A.    **FEDERAL RULE OF CIVIL PROCEDURE 20(A)(2)**

4           Pursuant to Fed. R. Civ. P. 20(a)(2), "Persons... may be joined in one action as defendants if:

5   (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to

6   or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B)

7   any question of law or fact common to all defendants will arise in the action. *Id.* Misjoinder of

8   parties is not grounds for dismissing an action.  Fed. R. Civ. P. 21.  "On motion or on its own, the

9   court may at any time, on just terms, add or drop a party.  The court may also sever any claim

10  against a party." *Id.*

11          The purpose of Rule 20 is "to promote trial convenience and expedite the final resolution of

12  disputes, thereby preventing multiple lawsuits, extra expense to the parties, and loss of time to the

13  court as well as the litigants appearing before it." *M.K. v. Tenet*, 216 F.R.D. 133, 137 (D.D.C.

14  2002), accord *Lynch v. Am. Family Mut. Ins. Co.*, Case No. 2:10-CV-00962, 2010 U.S. Dist. LEXIS

15  116940 at *5 (D. Nev. Oct. 12, 2010).  "[T]he two prongs of Rule 20(a) are to be liberally construed

16  in the interest of convenience and judicial economy... in a manner that will secure the just, speedy,

17  and inexpensive determination of the action." *Davidson v. District of Columbia*, 736 F. Supp. 2d

18  115, 119 (D.D.C. 2010) (citations and alterations omitted); *see also, General Steel Domestic Sales,*

19  *LLC v. Suthers,* Case No. Civ S-06-411, 2007 U.S. Dist. LEXIS 19321 at *31 (E.D. Cal. Mar. 2,

20  2007) (noting the liberal construction of Rule 20(a)'s "series of transactions or occurrences" prong).

21  Thus, "the impulse is toward entertaining the broadest possible scope of action consistent with

22  fairness to the parties; [and] joinder of claims, parties, and remedies is strongly encouraged."

23  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966); *see also, Voltage Pictures, LLC v.*

24  *Does*, 2011 WL 1807438 at *5 (D.D.C. 2011) (holding that 5,000 BitTorrent users properly joined).

25          "Consideration of the two requirements for permissive joinder under Rule 20(a)(2) and their

26  application to the allegations in the [complaint] make clear that, at this procedural juncture, joinder

27  of the putative defendants is proper.  Joinder will avoid prejudice and needless delay for the only

28  party currently in the case, namely the plaintiff, and promote judicial economy." *Call of the Wild*

---

1  *Movie* 770 F.Supp2d 323 at *342.  Similarly, at this procedural juncture Plaintiff is the only party

2  currently in the case and joinder will avoid prejudice and delay and promote judicial economy.

3  **B.     BY ENGAGING IN <u>DISTRIBUTION</u> THROUGH THE E379 SWARM <u>AND</u>**

4  **<u>CONTRIBUTING</u> TO THE EFFICIENCY OF THE SWARM, DOES 1-10 SATISFY THE**

    **TRANSACTION OR OCCURRENCE TEST**

5  At its heart, the Transaction or Occurrence test looks to see whether the joined parties are

6  "logically related," which "is a flexible test and courts seek the broadest possible scope of the

7  action." *See, Voltage Pictures, LLC*, 2011 WL 1807438 at *5; *Call of the Wild Movie*, F. Supp. 2d,

8  2011 WL 996786, *3 (D.D.C. 2011) (collecting authorities allowing permissive joinder).

9  Contrary to Movants' assertion, many courts have in fact ruled that joinder is proper at least

10  at this stage of the litigation. *Liberty Media Holdings*, 2012 WL 628309, at *7 (collecting cases).

11  In the Movants' cited authorities the rulings failed to consider the "logical relation" analysis or even

12  the two distinct prongs of <u>Fed. R. Civ. P. Rule 20</u>.  Rather, those rulings provide conclusory

13  analysis based on concerns that the alleged infringements occurred on different days, at different

14  time and involving hundreds of defendants.

15  On the other hand, Judge Howell provided a much more extensive analysis of the joinder

16  issue and concluded that joinder was proper in cases such as this one, where the allegations

17  "sufficiently establish[ed] a *prima facie* case of infringement of plaintiff's copyright by users of the

18  same file-sharing software program that operates through simultaneous and sequential computer

19  connections and date transfers among the users." *Call of the Wild Movie, LLC v. Smith*, 274 F.R.D.

20  at 340.  Therein, Judge Howell distinguished a number of contrary rulings that had found joinder

21  improper in both torrent and earlier P2P cases. *See, Id.* at 341-342 (collecting and distinguishing

22  cases).  Overall, the rulings relied upon by the Movants demonstrate a lack of full understanding of

23  the torrent platforms.  In many of the movant's cited authorities (in cases targeting between 188

24  and 5,011 Does) the court found joinder improper because merely alleging that the Doe defendants

25  all used the same ISP and BitTorrent, to conduct copyright infringement without any indication that

26  they acted in concert fails to satisfy the arising out of the same series of transactions or occurrences

27  requirement.  However:

28

"[c]ases involving BitTorrent technology raise a new and distinct method of alleged copyright infringement that was not possible with the earlier P2P technology, mainly that BitTorrent users collectively share the same exact file by each contributing a small piece of the file to the user downloading the file. Furthermore, unlike the earlier P2P technology, the BitTorrent file-sharing protocol makes every downloader also an uploader of the illegally transferred file. This distinguishes BitTorrent cases from the earlier P2P cases. Given this unique theory of copyright infringement, it is possible that BitTorrent users identified with the alleged illegal sharing of the same file are "logically related" and are "acting in concert."

_Liberty Media Holdings_, 2012 WL 628309, at *7; see also _Call of the Wild Movie_, F. Supp. 2d, 2011 WL 996786, *3 (D.D.C. 2011).

Here, unlike the plaintiffs in Movants' cited authorities, Plaintiff alleges **contributory** copyright infringement. This count goes _directly_ to the interaction between defendants, and, as such, all contributors are properly joined in this suit. See, _Bar's Leaks Western, Inc. v. Pollock_, 148 F.Supp710 (N.D.Cal. 1957) (In copyright, trade-mark and unfair competition actions under federal law, all persons participating in actionable conduct are jointly and severally liable... .)

Second, the Movants' reliance is in error because those cases attempted to join defendants whose infringing activity took place of a period of more than a month and/or the joinder of over hundreds, if not thousands, of defendants in single suit. The court noted that such facts weigh against joinder.

Plaintiff's allegations, however, lead to an opposite finding as each and every defendant is alleged to have been a member of _**the same exact infringing swarm, on the same exact date, sharing the same exact motion picture, and the same exact digital copy (hash file)**_ and as such the _close_ proximity of the alleged infringements _does_ show that these defendants participated in the same swarm. Each and every defendant was part of _**the same exact infringing swarm, on the same exact date, sharing the same exact single motion picture, and the same exact digital copy (hash file - which is impossible to reproduce unless each and every member of the swarm gave to each other the same exact pieces of the video in which they infringed)**_. And the nature of BitTorrent "causes the file to be broken up over hundreds of pieces ("Bits") that make both downloading and uploading quicker and more efficient. Each bit is then immediately made available for distribution to other seeking the same file. The effect of this method of infringement means that every user who has a copy of the infringing material on a torrent network must necessarily also be a source for other

1   the download that same material." (Compl. at ¶55)  This argument *alone* has been sufficient to

2   satisfy the same transaction or occurrence test.

3         Here, the fact that Plaintiff is alleging infringement of only one work tends to show a

4   relationship among all Doe Defendants.  This notion has been applied to other forms of Intellectual

5   Property as well and exemplified In *MyMail, Ltd. v. America Online, Inc.*, 223 F.R.D. 455 (D.C.

6   Tex. 2004), where the court specifically held that joinder of unrelated defendants who allegedly

7   infringement the same patent was proper.  The court stated:

8       A logical relationship exists if there is some nucleus of operative facts or
    law....MyMail alleges that all defendants have infringed the '290 patent....The
9   UOL Defendants urge the Court to adopt the rule that infringement by different
    defendants does not satisfy Rule 20's same transaction requirement, but the Court
10  finds that this interpretation of Rule 20 is a hypertechnical one that perhaps fails
    to recognize the realities of complex, and particularly patent, litigation. In essence,
11  the UOL Defendants advocate a rule that requires separate proceedings simply
    because unrelated defendants are alleged to have infringed the same patent. The
12  Court disagrees with such a per se rule that elevates form over substance. Such an
    interpretation does not further the goals of Rule 20, especially for discovery and
13  motion purposes.

14        Plaintiff also asserts - and for which the Movants can cite no authority that has contemplated

15  this argument - that each putative defendant contributed not only bits of the file but *also* contributed

16  to the number of sources available for the file and to the speed and efficiency of the swarm:

17      "[t]he total number of users participating in the swarm at any given time increases
    the overall speed and efficiency at which all the other swarm members can
18  download the entire file.  Thus, each user relies on the other swarm members for
    not only specific bits of the audiovisual file he exchanges to or from specific
19  users, but also he necessarily relies on all the other members of the swarm to
    increase the speed at which he is able to download the file.   In effect, due to the
20  nature of an infringing swarm, every infringer is - and by necessity together -
    simultaneously both stealing the Plaintiff's copyright protected material and
21  redistributing it for others." (Compl. at ¶56) (emphasis added)

22        Any argument that defendants committed an isolated act of infringement is in error -

23  BitTorrent only works because of the interconnected and interdependent nature of its users.

24  Similarly, any argument that one merely downloads without knowingly uploading is also folly.

25  Such a scenario defeats the purpose of BitTorrent and for this reason it polices itself and punishes

26  any such user by lowering download speeds making downloads impossible. (Compl. at ¶57)

27        The movant states "Plaintiff attempts to create the illusion that Defendants made a concerted

28  effort.  This representation is misleading as Plaintiff does not specifically allege that the Defendants

shared pieces of the file with each other... [a] close reading of the Complaint reveals that Plaintiff does not, and cannot, allege that each John Doe shared a file with each other, but rather it states that the John Doe defendants allegedly downloaded a file over the course of many hours." (ECF 13 p. 8).  Plaintiff, however, needs no "illusion" as the defendants mere presence in the swarm at *any* time increases the speed and efficiency at which other members of the swarm can upload and download the same file and so too does it increase the overall availability of the motion picture.

Indeed, under the BitTorrent protocol it ***is necessary*** that each of the Does participated in or **contributed** to the downloading of each other's copies of the work at issue because presence alone **contributes** to the efficiency and speed of the swarm and **contributes** to the availability of the *exact infringing digital copy* and on such basis, Plaintiff alleges **Contributory** Infringement.

Furthermore, the only evidence available to either party is that each and every defendant all shared the *exact same digital copy* (hash file) and thus each and every member of the swarm has the exact same bits that every other member of the swarm possesses (a process impossible to replicate by any other means).  As stated by Judge Michael M. Anello of the Southern District of California:

> "Here, based on Plaintiff's allegations, it appears that Doe Defendants are logically related and, at least at this procedural juncture, Plaintiff sufficiently alleged that its claims against them potentially stem from the same transaction or occurrence.  Here, unlike *Hard Drive Prods.*, **where it was unclear whether all one hundred and eighty eight doe defendants were part of the same "swarm," Plaintiff alleges all Defendants participated in the same "swarm" and all of the IP addresses identified downloaded and shared the same unique "hash" (file identifier)**... this allegation supports Plaintiff's claim that Doe Defendants "collectively" infringed on Plaintiff's copyright."

*Liberty Media Holdings*, 2012 WL 628309, at *7 (emphasis added).

Plaintiff's allegations are precisely the same as alleged in *Liberty Media Holdings*.  **Exhibit 8.**

### C.   ALL DOES ARE TIED TOGETHER BY COMMON QUESTIONS OF LAW AND FACT

"As to the second prong of Rules 20(a), the rule does not require that all questions of law and fact raised by the dispute be common... common questions have been found to exist in a wide range of context." *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974).  "In each case, the plaintiff will have to establish against each putative defendant the same legal claims concerning the validity of the copyrights in the movies at issue and the infringement of the

1   exclusive rights reserved to the plaintiffs as copyright holders." *Call of the Wild Movie*, 770

2   F.Sipp2d 332 at *343.  In particular, the common questions include, but by no means are limited to:

3   1) identifying the Doe defendants; 2) the validity of Plaintiff's copyright; 3) numerous factual

4   questions regarding how the BitTorrent protocol functions; and 4) establishing that the E379 Hash

5   is an infringing copy of Plaintiff's work.  *Id.* (identifying common issues of BitTorrent protocol);

6   *Gammons v. Real Prop. Inv. Servs.,* Case No. CV-10-8081, 2010 U.S. Dist. LEXIS 139930 at *12

7   (D. Ariz. Aug. 9, 2010) (finding common questions of law and fact weighed in favor of joinder

8   where plaintiff's claims alleged the same conduct against each defendant).

9        Moreover, the bare possibility that defendants may raise separate affirmative defenses is no

10   reason to forego the efficiency of a consolidated proceeding for the common issues. *See, Call of the*

11   *Wild Movie*, F.Supp.2d, 2011 WL 996786, *5 ("different factual and substantive legal defenses [do

12   not] defeat, at this stage of the proceeding, the commonality in facts and legal claims that support

13   joinder under Rule 20(a)(2)(B)").  Indeed, the only motions filed on behalf of any defendant are

14   "identical."

15        **D.    JOINDER IS A PRAGMATIC SOLUTION THAT WILL NOT PREJUDICE DEFENDANTS**

16        Contrary to the Movants' argument (again, based on "authorities" predicated on complaints

17   naming more than 100 defendants and/or defendants who infringed over the period of months),

18   joinder is not only procedurally proper as to all 10 Doe Defendants, but it is also the only procedural

19   solution at this juncture that makes pragmatic sense for the Court, the Plaintiff, the ISPs, and even

20   the Defendants. *Liberty Media*, 2012 WL 628309, at *7 ("[J]oinder in a single case of the putative

21   defendants who allegedly infringed the same copyrighted material promotes judicial efficiency, and

22   in fact, is beneficial to the putative defendants.") (quoting *Call of the Wild*, 770 F.Supp.2d at 244);

23   *London-Sire Records*, 542 F.Supp.2d at 161 (noting that joinder "allows the defendants to see the

24   defense, if any, that other John Does have raised"); *Call of the Wild Movie*, F.Supp.2d, 2011 WL

25   996786, *6 ("The putative defendants are not prejudiced but likely benefitted by joinder, and

26   severance would debilitate the plaintiff's efforts to protect their copyrighted materials and seek

27   redress from the putative defendants who have allegedly engaged in infringing activity").

28   //

---

23

1      Plaintiff is - again - curious as to why Movants are under the belief that "allowing joinder in

2   this case would involve *dozens of defendants*... and *8 additional ISPs*" as there are merely **10 Doe**

3   **Defendants** and **5 ISPs** in the instant action.  Perhaps in the haste of Movants maneuver to don the

4   cloak of anonymity in complete disregard for the Local Rules they involved themselves in the

5   wrong action. The Movants should note that **all 5** ISPs have complied or are complying without

6   reservation.  When one pursues BitTorrent litigation in a proper and ethical manner, courts and third

7   parties alike are amenable to your requests.  The cloak of anonymity should be removed from the

8   Movants to determine whether they are in the proper action or whether their arguments should be

9   directed to the proper case involving "**dozens of defendants**" and "**eight additional [9 in total?]**

10  **ISPs.**"

11      This Court should consider, as an example, what would happen if severance is ordered or

12  joinder found to be improper.  For Plaintiff to vindicate its rights, it would have to file 10

13  near-identical complaints and 10 near-identical motions for early discovery.  This Court would then

14  have to review and rule on the 10 different motions.  Then the ISPs would have to respond to 10

15  near-identical subpoenas, and so on.  Such an inefficient procedure would do nothing but waste the

16  Court's time and resources, increase the Plaintiff's administrative costs, multiply the burden on

17  third-party ISPs, and bury a determination on the merits under mountains of wasteful procedure.

18      Joinder, on the other side of that same coin, "ensures administrative efficiency for the Court,

19  the plaintiffs, and the ISP, and allows the defendants to see the defenses, if any, that other John

20  Does have raised." *London-Sire Records*, 542 F.Supp.2d at 161.  Furthermore, 10 defendants is a

21  manageable number for the Court from an administrative prospective and the Central District is

22  better equipped than most to ensure the Court does not become overwhelmed in that it limits the

23  number of Doe Defendants one may bring suit against to 10.  This Local Rule thereby ensures the

24  administrative efficiency of the Court and grants some relief from the financial burden on those who

25  wish to vindicate their statutory rights.

26      It is true the only ones not benefitted by joinder are the infringers who hope to find a

27  procedural loophole through which to escape from answering, on the merits, for their copyright

28  infringement.  It is important to note that the Movants do not once proclaim their innocence, as one

---

24

might expect of someone who was wrongfully accused.  Making the case so procedurally unwieldy that infringers escape a judgment, however, is not in the interests of justice, fairness, and a speedy determination of the case on the merits.  *See*, *Call of the Wild Movie*, F.Supp.2d, 2011 WL 996786, *6-7 (denying severance because alternative would cause plaintiff to "face significant obstacles in their efforts to protect their copyrights from illegal file-sharers and this would only needlessly delay their case... this would certainly not be in the interests of convenience and judicial economy, or secure a just, speedy, and inexpensive determination of the action.").  "Given the administrative burden of simply obtaining identifying information to properly name and serve alleged infringers, it is highly unlikely that the plaintiffs could protect their copyrights in a cost-effective manner." *Id.*

Indeed, the facts alleged here have been found to satisfy the requirements of permissive joinder not only in the District Courts of California and the Ninth Circuit but before other courts as well. *Liberty Media Holdings*, 2012 WL 628309, at *7; *Hard Drive Prods.*, 809 F.Supp.2d 1150 (N.D.Cal. 2011); *Voltage Pictures, LLC*, 2011 U.S. Dist. LEXIS 50787 (D.D.C. May 12, 2011); *Call of the Wild Movie*, 770 F.Supp.2d 332 (D.D.C. Mar. 22, 2011) (collecting cases)).  The Movants are unable, however, to cite any authority in which joinder was found to be improper under Plaintiff's allegation and Plaintiff's legal arguments.

### CONCLUSION

Because the anonymous Movants lack standing in this action and because they have not been unduly burdened this Motion to Quash and Dismiss should be stricken or denied.  Furthermore, because Plaintiff has properly alleged facts sufficient to satisfy both personal jurisdiction and joinder in this Court 808 Holdings respectfully requests that the Court deny the remainder of the present Motion (ECF 13).


DATED: September 12, 2012              LANG, HANIGAN & CARVALHO, LLP.


                                       By _s/ Timothy R. Hanigan_
                                       Timothy R. Hanigan
                                       Attorneys for 808 Holdings, LLC.